[801 NE2d 821, 769 NYS2d 445]

Twin Lakes Development Corp., Appellant, v Town of Monroe, Respondent.

Argued October 21, 2003; decided November 20, 2003

**POINTS OF COUNSEL**

*James G. Sweeney, P.C.,* Goshen (*James G. Sweeney* of counsel), for appellant. I. The Town has no statutory power to impose a generic parkland or recreation "fee." (*Gulest Assoc. v Town of Newburgh,* 25 Misc 2d 1004, 15 AD2d 815; *Jenad, Inc. v Village of Scarsdale,* 23 AD2d 784, 18 NY2d 78; *Matter of Bays-*

*water Realty & Capital Corp. v Planning Bd. of Town of Lewisboro,* 76 NY2d 460.) II. The Town's local law violates the "rough proportionality" test of *Dolan v City of Tigard* (512 US 374 [1994]). (*Weingarten v Town of Lewisboro,* 144 Misc 2d 849, 160 AD2d 668, 77 NY2d 926; *Nollan v California Coastal Commn.,* 483 US 825.) III. The legislative versus administrative distinction as affecting *Dolan's* reach is explained away. (*Parking Assn. of Ga., Inc. v City of Atlanta,* 515 US 1116; *Jenad, Inc. v Village of Scarsdale,* 18 NY2d 78.) IV. The traditional presumption of constitutionality does not shield Local Law No. 3 (2000) of the Town of Monroe. The courts below erroneously thought it did. (*Village of Euclid v Ambler Realty Co.,* 272 US 365; *Dolan v City of Tigard,* 512 US 374.) V. Local Law No. 3 (2000) of the Town of Monroe violates notions of procedural due process and is consequently unconstitutional. (*Stuart v Palmer,* 74 NY 183; *Central of Ga. Ry. Co. v Wright,* 207 US 127; *Garden Homes Woodlands Co. v Town of Dover,* 95 NY2d 516; *Roosevelt Hosp. v Mayor, Alderman & Commonalty of City of N.Y.,* 84 NY 108; *Dolan v City of Tigard,* 512 US 374; *Board of Regents of State Colls. v Roth,* 408 US 564; *Perry v Sindermann,* 408 US 593; *RRI Realty Corp. v Incorporated Vil. of Southampton,* 870 F2d 911; *AA&M Carting Serv. v Town of Hempstead,* 183 AD2d 738; *People v Brooklyn Garden Apts.,* 283 NY 373.) VI. Local Law No. 7 (1991) of the Town of Monroe is illegal as being an unconstitutional denial of due process in violation of the Fourteenth Amendment. (*Jewish Reconstructionist Synagogue of N. Shore v Incorporated Vil. of Roslyn Harbor,* 40 NY2d 158; *Home Bldrs. Assn. of Cent. N.Y. v Town of Onondaga,* 267 AD2d 973; *Matter of Wright v Town of La Grange,* 181 Misc 2d 625; *Compañia Gen. de Tabacos de Filipinas v Collector of Internal Revenue,* 275 US 87.) VII. The "audit" provisions of Town Law §§ 118 and 119 do not rescue Local Law No. 7 (1991) of the Town of Monroe from illegality. (*Matter of Wildlife Assoc. v Town Bd. of Town of Southampton,* 141 AD2d 651; *Bradford v County of Suffolk,* 257 App Div 777, 283 NY 503; *Bloom v Mayor of City of N.Y.,* 35 AD2d 92, 28 NY2d 952.)

*Drake, Sommers, Loeb, Tarshis, Catania & Liberth, PLLC,* Newburgh (*Stephen J. Gaba* of counsel), for respondent. I. A town board may establish the amount to be paid in lieu of parkland under Town Law § 277 (4) through a schedule of fixed per-lot charges. (*Jenad, Inc. v Village of Scarsdale,* 18 NY2d 78; *Matter of Bayswater Realty & Capital Corp. v Planning Bd. of Town of Lewisboro,* 76 NY2d 460; *Weingarten v Town of Lewisboro,* 144 Misc 2d 849, 160 AD2d 668, 77 NY2d 926; *Dolan v*

*City of Tigard,* 512 US 374.) II. The charge of $1,500 per lot imposed upon plaintiff in lieu of parkland did not constitute an unconstitutional taking of plaintiff's property without just compensation nor did it violate due process. (*Manocherian v Lenox Hill Hosp.,* 84 NY2d 385; *Jenad, Inc. v Village of Scarsdale,* 18 NY2d 78; *Matter of Bayswater Realty & Capital Corp. v Planning Bd. of Town of Lewisboro,* 76 NY2d 460; *Briarcliff Assoc. v Town of Cortlandt,* 272 AD2d 488; *Bonnie Briar Syndicate v Town of Mamaroneck,* 94 NY2d 96; *Nollan v California Coastal Commn.,* 483 US 825; *Dolan v City of Tigard,* 512 US 374; *Weingarten v Town of Lewisboro,* 144 Misc 2d 849, 160 AD2d 668, 77 NY2d 926; *Friends of Animals v Associated Fur Mfrs.,* 46 NY2d 1065; *AA&M Carting Serv. v Town of Hempstead,* 183 AD2d 738.) III. A municipality may require applicants for subdivision approval to reimburse it for consultants' fees incurred by the planning board in the course of processing the subdivision application. (*Jewish Reconstructionist Synagogue of N. Shore v Incorporated Vil. of Roslyn Harbor,* 40 NY2d 158; *Matter of Coates v Planning Bd. of Inc. Vil. of Bayville,* 58 NY2d 800; *Suffolk County Bldrs. Assn. v County of Suffolk,* 46 NY2d 613; *Home Bldrs. Assn. of Cent. N.Y. v Town of Onondaga,* 267 AD2d 973; *Matter of Wildlife Assoc. v Town Bd. of Town of Southampton,* 141 AD2d 651; *Consolidated Edison Co. of N.Y. v Town of Red Hook,* 90 AD2d 803, 60 NY2d 99.)

## OPINION OF THE COURT

GRAFFEO, J.

The Town of Monroe requires applicants for residential subdivision permits to pay fees in lieu of dedicating a portion of their property for recreational purposes and to reimburse the Town for consulting costs incurred in processing the application. In this declaratory judgment action, plaintiff claims that these requirements equated to a taking of its property without just compensation and violated due process. Because plaintiff has failed to establish any constitutional infirmities, we affirm the Appellate Division order granting defendant summary judgment dismissing the complaint.

Plaintiff Twin Lakes Development Corp. is a real estate developer and the owner of a 28-acre parcel in the Town of Monroe. In March 1999, plaintiff applied to the Town Planning Board for approval to subdivide its property into 22 residential lots. The Board considered the application, undertaking a State Environmental Quality Review Act analysis that culminated in a final environmental impact statement. As required by Monroe

Town Code § 26B-2 (A) (11), plaintiff periodically deposited funds into an escrow account from which the Town paid consulting costs it incurred in conjunction with the application.

When the review was completed, the Board adopted a "Resolution of Conditional Final Approval," imposing several conditions on plaintiff. In particular, citing section 277 of the Town Law, the Board mandated a "payment in lieu of parkland dedication to the Town of Monroe" for each of the lots created and reimbursement for any outstanding consulting fees. The "in lieu of" payments are set forth in Monroe Town Code § 26B-2 (A) (7), which establishes a $1,500 per-lot fee for proposed subdivisions of five or more lots where the Board has determined parkland dedication is not appropriate.

To obtain the necessary approvals to proceed with its project, plaintiff paid $33,000 for "in lieu of parkland" fees ($1,500 × 22 lots) and a total of $22,000 in consulting costs, all apparently "under protest." However, plaintiff did not bring a proceeding challenging the Board's determination that the project fell within the parkland dedication provision or request an audit of the consulting fees the Town contended it had incurred. Instead, in February 2001, plaintiff commenced this declaratory judgment action seeking to invalidate the two fee provisions on constitutional grounds and to obtain a refund of the fees it paid, as well as attorney's fees. The Town moved, and plaintiff cross-moved, for summary judgment. Supreme Court granted the Town's motion, dismissing the complaint, and the Appellate Division affirmed. Plaintiff now appeals as of right (CPLR 5601 [b] [1]) and we also affirm.

## Per-Lot Recreation Fee

Town Law § 277 (4) permits a town planning board, where it has made necessary preliminary findings, to require that developers of residential subdivisions include in their plans land for parks or other recreational purposes. "The section represents a legislative reaction to the threatened loss of open land available for park and recreational purposes resulting from the process of development in suburban areas and the continuing demands of the growing populations in such areas for additional park and recreational facilities" (*Matter of Bayswater Realty & Capital Corp. v Planning Bd. of Town of Lewisboro*, 76 NY2d 460, 468 [1990] [discussing earlier version of statute]). Specifically, the statute conditions a town's power to mandate a parkland set-aside on

"a finding [by the planning board] that a proper case exists for requiring that a park or parks be suitably located for playgrounds or other recreational purposes within the town. Such findings shall include an evaluation of the present and anticipated future needs for park and recreational facilities in the town based on projected future population growth to which the particular subdivision plat will contribute" (Town Law § 277 [4] [b]).

The statute also provides that a planning board may require a monetary payment in an amount to be established by the town board if the planning board determines that, although the subdivision is a "proper case" for requiring park dedication, "a suitable park or parks of adequate size to meet the requirement cannot be properly located on such subdivision plat" (*id.* ¶ [c]). The town must deposit any monies paid "in lieu of" a parkland set-aside into a trust fund for use exclusively for recreational purposes (*see id.*).

As previously noted, the Monroe Town Code currently sets the "in lieu of" fee at $1,500 per lot for subdivisions consisting of five or more lots (*see* Monroe Town Code § 26B-2 [A] [7] [b]). The Town's graduated fee schedule was fixed by a 2000 amendment to the Code that increased the fees based, in part, on the "rapid growth" in the Town's population over the previous 15 years (Local Law No. 3 [2000] of Town of Monroe § 1). The Town Board justified the fee increase by explaining that "existing facilities for active recreation are severely limited and are inadequate to accommodate the needs of its residents," and that the Board's efforts to address increased demand for recreational facilities resulting from the population growth were "hampered by the constraints of the unavailability of suitable lands and upward-spiraling land costs" (*id.*). The additional fee income would enable the Town to "plan for the recreational needs of the residents in these new subdivisions and site plans and ameliorate the additional strain these new residents place on the already limited park and recreational facilities of the Town" (*id.*).

Plaintiff argues that the $1,500 per-lot recreation fee constitutes an unconstitutional taking because the amount of the fee is not based on an "individuated assessment" of the recreational needs generated by its subdivision plan and thus is not roughly proportional to those needs. Plaintiff further contends that the Code violates procedural due process because applicants cannot

challenge the amount of the fee as excessive in relation to a particular subdivision plan. Plaintiff therefore challenges the Town's authority to impose a fixed, per-lot recreation fee on developers in lieu of requiring developers to set aside dedicated parkland.

The Takings Clause of the Fifth Amendment of the United States Constitution—applicable to states through the Fourteenth Amendment—provides, "nor shall private property be taken for public use, without just compensation" (see *Dolan v City of Tigard*, 512 US 374, 383-384 [1994]). We have observed that the "[e]lementary and strong constitutional principles protect[ing] private property rights . . . evolved to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole" (*Manocherian v Lenox Hill Hosp.*, 84 NY2d 385, 391 [1994], *cert denied* 514 US 1109 [1995] [quoting *Penn Cent. Transp. Co. v City of New York*, 438 US 104, 123 (1978) (internal quotation marks omitted)]).

The United States Supreme Court has developed a standard for evaluating takings claims arising in the "context of exactions—land-use decisions conditioning approval of development on the dedication of property to public use" (*City of Monterey v Del Monte Dunes at Monterey, Ltd.*, 526 US 687, 702 [1999]). A reviewing court must assess whether an "essential nexus" exists between the "legitimate state interest" advanced as the justification for the restriction and the condition imposed on the property owner (*see Dolan*, 512 US at 386 [quoting *Nollan v California Coastal Commn.*, 483 US 825, 837 (1987)]; *Bonnie Briar Syndicate v Town of Mamaroneck*, 94 NY2d 96, 105-106 [1999], *cert denied* 529 US 1094 [2000]). Where such a nexus is present, the "degree of the exactions demanded" must have "the required relationship to the projected impact of [the applicant's] proposed development" (*Dolan*, 512 US at 388).

In *Dolan*, the Supreme Court analyzed whether a municipality made sufficient findings to support its decision to condition the applicant's expansion permit on a dedication of property for flood control and recreational purposes. After considering the various standards adopted by states, the Court determined that a "rough proportionality" test would "best encapsulate[ ] what we hold to be the requirement of the Fifth Amendment" (*id.* at

391).\* Thus, although "[n]o precise mathematical calculation is required," the dedication must be "related both in nature and extent to the impact of the proposed development" (*id.*).

██ Here, plaintiff failed to demonstrate that the Town's $1,500 per-lot fee constitutes a taking. When enacting the current fees, the Town made explicit findings that the demand for recreational facilities exceeded existing resources and that continued subdivision development, paired with the "upward-spiraling land costs," would exacerbate the problem. Additionally, the statute authorizing the Town to impose recreation fees mandates that fees collected in lieu of parkland set-asides be deposited into a trust fund to be used strictly for recreational purposes (*see* Town Law § 277 [4] [c]). Taken together, these factors clearly establish the essential nexus between the stated purpose of the condition and the fee (*cf. Nollan*, 483 US at 837).

With respect to plaintiff's application, the Town concluded:

> "based on the present and anticipated future need for park and recreational opportunities in the town, and to which the future population of this subdivision will contribute, that parklands should be created as a condition of approval of this subdivision. However, because the lot area and ownership patterns do not suit it to the development of a park suitable to meet the requirements of the site, pursuant to Section 277 of [the] Town Law, the Planning Board requires that the applicant deliver payment in lieu of parkland dedication . . . ."

These findings satisfy the requirements of Town Law § 277 (4) (c) and reflect the individualized consideration of the project's impact contemplated by *Dolan*. Plaintiff identifies no proof in the record to support a contrary conclusion that the $1,500 per-

---

\* The Supreme Court has recently clarified the reach of the "rough proportionality" standard and concluded that the standard is not applicable to "questions arising where . . . the landowner's challenge is based not on excessive exactions but on denial of development" (*Del Monte Dunes*, 526 US at 703 [municipality denied a development plan outright]). Here, the parties agree that plaintiff's challenge to the Town's per-lot recreation fee exacted in lieu of parkland dedication is governed by *Dolan*'s rough proportionality test. In this case, which involves placing conditions on development as opposed to an outright denial of a subdivision application, applying rough proportionality analysis is consistent with the reasoning of the Supreme Court in *Del Monte Dunes* and with our interpretation of that precedent (*see Bonnie Briar Syndicate*, 94 NY2d at 106-107 [discussing *Del Monte Dunes*'s limitation of the *Dolan* standard to exaction cases]).

lot fee is not roughly proportional to the impact its development would have on the recreational needs of the Town. Moreover, we are unpersuaded that *Dolan* precludes municipalities from establishing fixed fees to ensure that adequate recreational facilities can be provided. In light of plaintiff's heavy burden to rebut the presumption of constitutionality of this law (*see e.g. de St. Aubin v Flacke*, 68 NY2d 66, 76 [1986]; *Lighthouse Shores v Town of Islip*, 41 NY2d 7, 11 [1976]), plaintiff's unsubstantiated claims are insufficient to establish that the fee constitutes a taking.

Plaintiff further cites our holding in *Garden Homes Woodlands Co. v Town of Dover* (95 NY2d 516 [2000]) to support the argument that its due process rights were violated by the imposition of the per-lot recreation fees without a hearing to review the reasonableness of the fee amount. In *Garden Homes*, two municipalities undertook a joint street improvement project and imposed a series of special assessments on property owners within the improvement district to pay for the project. The plaintiff property owner did not receive notice of the proposed assessment and, therefore, did not object to the assessment. When the plaintiff learned that it faced a $44,800 special assessment, it brought an action that included a challenge to the adequacy of the notice-by-publication method used by one of the municipalities. We held that the municipality's compliance with the notice-by-publication provision of Town Law § 239, which governs the filing of assessment rolls, was insufficient to protect the property owner's right to contest the special assessment before it was imposed (*id.* at 519-520).

Relying on *Jenad, Inc. v Village of Scarsdale* (18 NY2d 78 [1966])—involving another recreation fee—plaintiff reasons that, because an "in lieu of" exaction is not a "general tax," such an exaction is the equivalent of the special assessment in *Garden Homes. Jenad* does not support plaintiff's position. In *Jenad*, which has been partially abrogated by *Dolan* (*see* 512 US at 389 [declining to adopt *Jenad*'s standard for measuring the sufficiency of the nexus]), we went further than holding that the "in lieu of" fee was not a "general tax" to conclude:

"[t]his is not a tax at all but a reasonable form of village planning for the general community good. . . . This was merely a kind of zoning, like set-back and side-yard regulations, minimum size of lots, etc., and akin also to other reasonable requirements for necessary sewers, water mains, lights, sidewalks,

etc. If the developers did not provide for parks and playgrounds in their own tracts, the municipality would have to do it since it would now be required for the benefit of all the inhabitants" (18 NY2d at 84).

Similarly, the per-lot fee at issue here is neither a special assessment nor a tax. The requirement that developers pay the recreation fee is generally applicable to any Town property owner seeking to divide its property. Furthermore, unlike the property owner in *Garden Homes*, plaintiff can make no claim that it lacked notice of the "in lieu of" fee—a generally applicable land-use law adopted after a public hearing and appearing in the Monroe Town Code. Not only was the law adopted through a public legislative process but also the Town revisits the fee schedule on a yearly basis, at which time concerned property owners can voice objections. Additionally, the Town's recreation fees were not imposed against an unsuspecting property owner who could be divested of title for failing to pay, but upon a knowing property owner who willingly subjected itself to the fees by instigating the subdivision application process. For all of these reasons, *Garden Homes* is inapposite.

## Consulting Fees

The power of the Town to charge "some amount" associated with the consideration of a land-use application is not disputed in this case (*see Suffolk County Bldrs. Assn. v County of Suffolk*, 46 NY2d 613, 619 [1979]). This Court has repeatedly observed that this power is limited by the requirement "that the fees charged be reasonably necessary to the accomplishment of the regulatory program" (*id.* [citing *Jewish Reconstructionist Synagogue of N. Shore v Incorporated Vil. of Roslyn Harbor*, 40 NY2d 158, 163 (1976)]). Plaintiff argues that its due process rights were violated by the requirement that it pay the consulting fees incurred in conjunction with its application, asserting that no opportunity existed to challenge the reasonableness of those fees.

Section 26B-2 (A) (11) (a) of the Monroe Town Code requires an applicant to deposit an escrow with the Town Clerk "to cover the costs being incurred by the town for all consultant services, including but not limited to engineering, planning and legal as well as clerical costs incurred in the processing and reviewing of such application." The Code further provides that "[t]he Planning Board, in consultation with the applicant, shall compute

the amount of the escrow to be posted with the town. Such amount shall be reasonably related to the costs attendant to the town's review of the application" (§ 26B-2 [A] [11] [i] [1]). Thus, under the challenged provisions, the applicant is required only to reimburse the Town for fees actually expended.

Plaintiff accurately observes that the consulting fee provisions do not include an express audit component providing an applicant with the opportunity to review the fee assessment but cites no authority for the proposition that such a mechanism must be contained within the fee provisions themselves as opposed to elsewhere in the statutory or regulatory scheme. The Code, however, expressly limits the fees that can be exacted to those that are "reasonable" (see Monroe Town Code § 26B-2 [A] [11] [a], [i] [1]) and the Town interprets the fees as subject to the audit provisions of Town Law §§ 118 and 119. In addition, uncontradicted proof in the record establishes that (1) the Town pays the same rate for consulting services as it charges applicants; (2) the Planning Board audits vouchers submitted by consultants in the first instance and rejects any excessive or unnecessary charges; and, (3) applicants may inspect consultants' invoices upon request.

Here, plaintiff apparently paid the fees "under protest" but the record contains no indication of the nature of that protest and plaintiff did not request an audit of the fees. Indeed, although plaintiff complains that it has been deprived of an opportunity to contest the consulting fees, it has not alleged that the fees were, in fact, unreasonable. Under these circumstances, plaintiff has failed to establish a due process violation.

Accordingly, the order of the Appellate Division should be affirmed, with costs.

Chief Judge KAYE and Judges G.B. SMITH, CIPARICK, ROSENBLATT and READ concur.

Order affirmed, with costs.